(55 South. 348.)

No. 18,512.

LONG v. CHARLES A. KAUFMAN CO.,
Limited.

(May 8, 1911.)

*(Syllabus by the Court.)*

DAMAGES (§ 40*)—BREACH OF CONTRACT—ELE-
MENTS.

Where future profits are claimed as dam-
ages for the breach of a contract, the quantum
must be established by full, clear, and definite
proof. Where some of the expense factors of
a delivery business are not proven, and others
are controverted, the court will adopt the usual
rate of profits derived from the conduct of such
a business as the measure of damages.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 72–88; Dec. Dig. § 40.*]

Appeal from Civil District Court, Parish of
Orleans; Fred D. King, Judge.

Action by George W. Long against the
Charles A. Kaufman Company, Limited.
From the judgment, plaintiff appeals. Re-
versed and amended.

See, also, 127 La. 764, 53 South. 984.

Solomon Wolff and Dinkelspiel, Hart &
Davey, for appellant. A. A. Calongne, A. J.
Peters, Woodville & Woodville, and James
Wilkinson, for appellee.

LAND, J. The plaintiff sued for damages
for a breach of a contract with the defend-
ant for the hiring of delivery wagons. The
case was brought before this court on a for-
mer appeal from a judgment in favor of the
plaintiff. See 122 La. 281, 47 South. 606.
This court held that there was a contract
and that it had been breached by the de-
fendant, but reversed the judgment and re-
manded the case because the plaintiff had
failed to prove actual damages. Id. On the
last trial it was testified by Mr. McEvoy that,
when the plaintiff was discharged in Septem-
ber, 1905, he was employed to do the same
work at the price of $21 per week per wagon,
while the price of $19 per week had been
paid to the plaintiff. It is argued that it

is not reasonable to believe that the defend-
ant would have paid $21 per week for the
same work that Long was under contract to
perform for $19 per week. The bare circum-
stance that the defendant paid McEvoy a
higher price than it had paid Long before his
discharge is no evidence of the absence of a
contract between Long and the defendant.
Our conclusion on the former appeal that
there was such a contract, and that it had
been breached by the defendant, is not shak-
en by the additional evidence adduced.

On the last trial the plaintiff obtained judg-
ment for $2,365.50, with legal interest from
September 4, 1905, until paid, for loss of
profits resulting from the breach of the con-
tract. Loss of profits may be recovered as
damages when they can be fully proven.
Schleider v. Dielman, 44 La. 462, 10 South.
934. In this case the amounts which the
plaintiff would have received are fixed by
the terms of the contract, and are therefore
legally certain. Plaintiff was to receive $57
per week for the service of three delivery
wagons, and the life of the contract was 83
weeks. Plaintiff's demand is based on the
proposition that his entire expenses would
have been $9.50 per wagon, or $28.50 for the
three, leaving a net profit of $28.50 per week.
The only expenses allowed in this estimate
are for hire of drivers and feed of horses.
In his testimony plaintiff estimated the costs
of shoeing and services of stableman and
blacksmith at $2.74 per month for the three
horses. Among the elements of expense do
not appear plaintiff's own time and services,
depreciation or wear and tear, rent, repairs,
taxes, and other factors that swell the ex-
pense account. It has been held that the
plaintiff's own time and labor should be
charged as an expense, and that some allow-
ance should be made for the uncertainty and
contingency of profits. 8 A. & E. Enc. Law
(2d Ed.) p. 623, and notes.

Plaintiff operated other delivery wagons,

and could not furnish an estimate of the net profits of his business as a whole. It appears that he reduced his business and finally sold out.

McEvoy was employed by the defendant to perform the same kind of delivery service immediately after the discharge of the plaintiff, and was paid $21 per week for each wagon. McEvoy, who was engaged in a large delivery business, and kept a wholesale feed store, testified that he was glad to make from $2 to $3 per week on each team. The expense items necessary to conduct a delivery business, according to his testimony, are much larger than estimated by the plaintiff. It was admitted that another witness would corroborate the testimony of McEvoy. Plaintiff figured out a net profit of $9.50 per week, or $494 per year, on each horse and wagon, worth from $200 to $250, employed in the delivery service. On the same basis, McEvoy should have earned a net profit of $11.50 per week on each team. Such enormous profits were hardly possible in a city where, as the plaintiff admits, the supply of delivery wagons was greater than the demand. Where future profits are claimed as damages, they must be established by clear and definite proof. Schleider Case, supra. In Jackson v. Doll, 109 La. 234, 33 South. 208, the court said:

"The future profits of a business which has been interrupted are open to the objection of remoteness as well as uncertainty."

"Expected profits are in their nature contingent upon many changing circumstances, uncertain and remote at best. They can be recovered only when they are made reasonably certain by the proof of actual facts, with a present data for a rational estimate of their amount." 13 Cyc. 49.

Plaintiff in his testimony underestimates some of the factors of expense, and is silent as to others. The testimony of the two witnesses for the defendant tends to show that the usual profits of the delivery business range from $2 to $3 per team per week. Considering that plaintiff appears to have conducted his business on a very economical basis, we deem it fair to adopt the higher rate. The other alternative is to dismiss the case as of nonsuit.

It is therefore ordered that the judgment below be reversed and amended, so as to condemn the defendant to pay to the plaintiff the sum of $9 per week, beginning September 4, 1905, and ending April 1, 1907, with legal interest on each installment from the end of the week, and that, as thus amended, said judgment be affirmed; costs of appeal to be paid by plaintiff.